# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT MALIK,<br>No. K64407,<br><br>        Plaintiff,<br><br>vs.<br><br>WILLIAM RANKIN, et al.,<br><br>        Defendants. | Case No. 15-cv-00084-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Robert Malik, an inmate currently housed in Big Muddy River Correctional Center within this judicial district, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights. He contends he has been denied proper medical care for multiple medical ailments since December 2011, when he entered the Illinois Department of Corrections ("IDOC"), continuing to the present. The allegations pertain to five different prisons and fourteen defendants. By order dated January 29, 2014, a separate motion for a temporary restraining order was denied, while ruling on a companion motion for preliminary injunction was deferred.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) Screening.– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for Dismissal.– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Moreover, "[e]ach allegation must be simple, concise, and direct." *Id*. 8(d)(1). The complaint is 111 pages long[1], and it is accompanied by three volumes of documentary support, measuring 4" thick. Nevertheless, undue length alone ordinarily does not justify the dismissal of an otherwise valid complaint. *Stanard v. Nygren*, 658 F.3d 792, 797-98 (7th Cir. 2011). "Fat in a complaint can be ignored, confusion or ambiguity dealt with by means other than dismissal." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Consequently, the voluminous documentary support will be ignored, as it is not organized in a meaningful way relative to the complaint. The Court

---

[1] It appears that pages 7-8 of the complaint were not transmitted to the Clerk of Court, which is Plaintiff's responsibility.

cannot be expected to comb though voluminous "group exhibits" in search of specific documents that support a given proposition.

The complaint is drafted in the style of a diary and is summarized as follows. In discussing the viability of the complaint, citations will be to both the pages as numbered by Plaintiff, and to the page numbers in the electronic Court record.

Upon conviction and transfer to the custody of the IDOC, Plaintiff was sent to Stateville Correctional Center in the Northern District of Illinois on December 6, 2011. Plaintiff disclosed his medical history, which included having bullet fragments in his right ankle since 2009. He immediately sought medical care for pain, elevated blood pressure, headaches, stomach pain, sweaty palms, an irregular feeling in his bladder, and right ankle pain. Before being afforded any treatment, Plaintiff was transferred to East Moline Correctional Center in the Central District of Illinois. No claims are asserted relative to Plaintiff's time at Stateville, and none of the defendants worked at Stateville.

Upon arrival at East Moline, Plaintiff was sought medical attention for his ailments, particularly his gastrointestinal and ankle issues. A physician opined that Plaintiff was exaggerating his concerns, but noted that Plaintiff could have a hernia or infection. Plaintiff developed severe constipation, hemorrhoids and abdominal pain, and he had blood in his stool, so he sought further treatment in March 2012. After only verbal questioning, the doctor told Plaintiff he would be fine and no treatment was offered. Plaintiff's condition worsened during the following six months, but he was not afforded any treatment; rather, he was repeatedly told he was fine. In mid-September 2012 emergency treatment was sought. Plaintiff's bladder had to be catheterized, and he was diagnosed with a bladder infection. The doctor asked Plaintiff when he was getting out of prison and then prescribed an ineffective medication. Even after filing

administrative grievances, Plaintiff did not receive any effective treatment. A nurse described Plaintiff's condition as "chronic" and "serious," and further opined that the doctor may not have afforded proper treatment.

In February 2013, Plaintiff was transferred to Jacksonville Correctional Center in the Central District of Illinois. Again, he immediately and repeatedly sought effective medical treatment. His mother, brother and sister even began writing and calling prison officials and the corporation that provides medical services for the IDOC—all to no avail. Plaintiff's ailments worsened. His left testicle swelled to the size of tennis ball, and puss began oozing from the scar over the bullet fragments in his ankle. Again, medical personnel asked when Plaintiff would be released from prison, as though that dictated treatment decisions. No efficacious medical treatment was offered. Instead, Plaintiff was evaluated by a psychologist who diagnosed Plaintiff as having an adjustment disorder with anxiety, and could not rule out anxiety somatization (mental illness causing real physical symptoms, often leading to a vicious cycle of concern and dissatisfaction with a lack of medical treatment, and escalating anxiety (*see* www.webmd.com/mental-health/somatoform-disorders)).

In December 2013, Plaintiff was transferred to Vandalia Correctional Center in the Southern District of Illinois. Plaintiff sought immediate treatment for his ailments. The physician who initially examined Plaintiff at Vandalia was rude and rushed, and he tossed Plaintiff out of the health care unit. Nevertheless, Plaintiff's ankle was x-rayed two days later. Upon follow-up, the physician said he had spoken with the physician at Jacksonville. Again, Plaintiff was not offered any treatment for his ailments. According to Plaintiff, even correctional officers noticed swelling and discoloration in his ankle, which was not acknowledged by medical personnel.

In January 2014, Plaintiff went on a hunger strike in order to secure proper diagnosis and treatment, and the return of a confiscated electronic device. The warden told Plaintiff to file grievances. The warden also said he would speak to the prison doctor, but thought it was not likely to do any good because "they" did not want to spend any money to treat Plaintiff. Other correctional officers expressed a similar view that Plaintiff would not receive proper medical treatment until he was released from prison. As the hunger strike stretch on, Plaintiff was placed in an isolation cell and shackled to the bed, which only exacerbated Plaintiff's ankle injury. (When the hunger strike ended is unclear).

In February 2014, Plaintiff was transferred to Big Muddy River Correctional Center in the Southern District of Illinois. He immediately sought medical care. The nurse who examined Plaintiff upon intake noted edema and possible infection in Plaintiff's right ankle, caused by the bullet fragments. Plaintiff went unseen by a physician, and the warden walked off when Plaintiff attempted to explain his need for help. A nurse did prescribe ibuprofen, which was ineffective. Plaintiff filed an emergency grievance, but his situation was not considered an emergency and he consequently received a disciplinary report—which he thinks was designed to intimidate him into giving up his quest for proper diagnosis and treatment.

Plaintiff was finally seen by a doctor in March 2014, and blood work was ordered. Plaintiff perceived that the doctor was attempting a cover-up, so he filed a grievance. The doctor failed to see Plaintiff in a week, as promised. Although a nurse explained that the doctor was running behind schedule, Plaintiff filed another grievance. The doctor eventually informed Plaintiff that the blood work was all normal and that there was no infection. Acetaminophen was prescribed, but was ineffective. Another grievance was filed.

In April 2014, over Plaintiff's objection, physical therapy was prescribed for Plaintiff's ankle pain. The therapist thought that massage would relieve the golf ball-sized cyst on Plaintiff's ankle, but it only caused pain and opened the scar so that puss was oozing out. Eventually, physical therapy was discontinued and an ultrasound was ordered.

Plaintiff's leg—from the knee to the ankle—was scanned, as well as his groin and testicles. The ultrasound examination did not reveal any problems. Plaintiff asserts that the wrong tests are being run.

Plaintiff brings suit against 14 named defendants: Wexford Health Sources, Inc.; seven medical professionals, and six prison administrators. He contends the defendants have been deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. A preliminary injunction is requested: examination and treatment by a neutral outside specialist. Compensatory and punitive damages are also sought.

## Discussion

### The Eighth Amendment

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Thus, at this early

juncture Plaintiff's purported medical ailments appear sufficiently serious to implicate the Eighth Amendment.

Proving deliberate indifference requires more than a showing of negligent or even grossly negligent behavior, the equivalent of criminal recklessness must ultimately be proved. *Farmer v. Brennan,* 511 U.S. 825, 835-37 (1994). Case law illustrates that when medical care is at issue, a defendant's skill level and ability to act are relevant to liability.

As a general matter, a prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. Of particular relevance to this case, depending upon the circumstances, the refusal to secure a second opinion or expert opinion can violate the Eighth Amendment. *See Pyles v. Fahim*, 771 F.3d 403, 411-12 (7th Cir. 2014). However, because personal involvement is required for liability to attach (*see Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005)), the *respondeat superior* doctrine—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). For example, a warden cannot face liability merely because he is the chief administrative officer of the prison. Wardens and top level administrators are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Relative to medical professionals, erroneous treatment constituting a substantial departure from accepted medical judgment, practice, or standards may constitute deliberate indifference. *See Gayton,* 593 F.3d at 623; *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999). Physicians' treatment decisions are given deference, "unless no minimally competent professional would have so responded under similar circumstances." *Sain v. Wood,* 512 F.3d 886, 894–95 (7th Cir.2008); *see Duckworth v. Ahmad,* 532 F.3d 675, 682 (7th Cir. 2008). Mere disagreement with

a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference. *See Snipes v. DeTella,* 95 F.3d 586, 591(7th Cir. 1996); *Ciarpaglini v. Saini,* 352 F.3d 328, 331(7th Cir. 2003); *Garvin v. Armstrong,* 236 F.3d 896,898 (7th Cir.2001) (Courts will not takes sides in disagreements about medical personnel's judgments or techniques). However, "nurses may generally defer to instructions given by physicians, 'but that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient.'" *Holloway v. Delaware County Sheriff,* 700 F.3d 1063, 1075 (7th Cir. 2012) (quoting *Berry v. Peterman,* 604 F.3d 435, 443 (7th Cir. 2010)). A corporate healthcare provider—like Defendant Wexford Health Sources, Inc.—cannot be held liable for its employees' constitutional violations simply because it is the employer. *See Shields v. Illinois Dept. of Corrections*, 746 F.3d 782 (7th Cir. 2014); *Maniscalco v. Simon,* 712 F.3d 1139, 1145 (7th Cir. 2013) (no *respondeat superior* liability for private corporation). However, the corporation can be liable if the plaintiff's harm is caused by its unconstitutional policy or practice. *See Shields*, 746 F.3d at 796; *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004).

Despite the prolix complaint, questions abound regarding the role of each named defendant. In any event, the complaint appears to offer a sufficient basis for alleging deliberate indifference by each of the 13 individual defendants—medical professionals and prison administrators, alike. The allegations against Wexford Health Sources, Inc., are a bit sketchy.

References to Wexford are sprinkled throughout the complaint. Plaintiff's family notified Wexford of the treatment issues (*see* Doc. 1, p. 19/Complt., p. 21). At least one of Plaintiff's treating physicians is alleged to be employed by Wexford (*see* Doc. 1, p. 16/Complt., p. 18), and the medical staff is generally characterized as working for Wexford (*see* Doc. 1-1, p. 34/Complt., p. 66). There are allegations indicating that individual doctors and others were

concerned with when Plaintiff would be released from prison, and remarks speculating that the cost of treatment was a motivating factor in treatment decisions (*see* Doc. 1-1, pp. 25-27/Complt., pp. 57-59; Doc. 1-2, pp. 25, 36/Complt., pp. 97, 108). Although Wexford's approval was required for certain tests (*see* Doc. 1-2, p. 37/Complt., p. 109), Wexford approved ultrasound testing (*see* Doc. 1, p. 34/Complt., p. 36), and there is no allegation that Wexford disapproved any test or treatment. Instead, treatment decisions are all laid at the feet of the defendant medical personnel and prison administrators. There is also no actual allegation of a Wexford policy or practice that treatment decisions should be made based on cost, rather than sound medical judgment. Only vague, speculative remarks about cost are described in the complaint and none are actually linked to Wexford. Nor is there an allegation of a conspiracy between medical staff and their employer, Wexford. Thus, under the *Twombly* pleading standard, there is an inadequate basis in the amended complaint to state a colorable Eighth Amendment claim against Wexford Health Sources, Inc. Wexford, therefore, will be dismissed without prejudice.

**<u>Severance and Venue</u>**

The fact that the complaint states colorable Eighth Amendment claims against 13 of the 14 named defendants does not end the analysis. Plaintiff himself recognizes two glaring issues: (1) the complaint presents claims stemming from how he was treated (or not treated) at multiple institutions, not all within the Southern District of Illinois where this Court is located; and (2) a two-year statute of limitations is applicable to his claims, some of which occurred as long as three years ago. He has filed a "Motion to Consolidate Jurisdiction in Southern District of Illinois" (Doc. 4). Plaintiff's motion (Doc. 4) will be denied for the reasons that follow.

Federal Rule of Civil Procedure 18 generally permits a party to join "as many claims as it has against an opposing party." FED.R.CIV.P. 18(a). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). With that said, Rule 20 permits multiple defendants to be joined in a single action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED.R.CIV.P. 20(a)(2)(A), (B).

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act ("PLRA"). *Id.* at 607, (citing 28 U.S.C. § 1915(b), (g)). "Unrelated claims against different defendants belong in different suits[.]" *George,* 507 F.3d at 607. Otherwise, prisoners easily could sidestep the requirements of the PLRA, in particular the provisions regarding filing fees. *See id*. Accordingly*, s*everance is appropriate under Federal Rule of Civil Procedure 21 as long as the two resulting claims are "discrete and separate." *Rice v. Sunrise Express,* 209 F.3d 1008, 1016 (7th Cir. 2000); *see also George,* 507 F.3d at 607. In other words, one claim must be capable of resolution despite the outcome of the other claim. *Id.*; *see also Gaffney v. Riverboat Servs. of Indiana, Inc.,* 451 F.3d 424, 442 (7th Cir. 2006).

Plaintiff Malik has described chronic, evolving ailments. All claims regarding deliberate indifference to his serious medical needs are based upon the Eighth Amendment. However, the treatment issues span three years and involve personnel at four different prisons. Thus, some,

but not all key facts will be the same relative to each defendant, or at least for the treatment afforded at each institution. As previously discussed, no conspiracy has been pleaded. The claims appear to be capable of resolution independently. Plaintiff now asserts that after complaining at the first institution the second denied him treatment in retaliation, and so on down the line. However, no retaliation claim is asserted in the complaint and, even if there were, the retaliation claims could each be decided independently.

The Court does not perceive a risk of inconsistent verdicts if claims and defendants are severed based upon where the events occurred. By severing the claims rather than dismissing them, Plaintiff is not prejudiced relative to the statute of limitations. *See Vinson v. Vermilion County, Ill.*, 2015 WL 343673, __ F.3d __, (7th Cir. Jan. 27, 2015). The complaint shall be severed into four separate cases:

> **Case 1:** **While Plaintiff was housed at East Moline Correctional Center between December 19, 2011, and February 13, 2013, Defendants William Rankin and Tod Van Wolvelaere were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment (Doc. 1, pp. 8-16/Complt., pp. 10-18);**
>
> **Case 2:** **While Plaintiff was housed at Jacksonville Correctional Center between February 19 and December 13, 2013, Defendants Marvin Reed, Eli Goodman, Becky Sudbrink and Nurse Warning were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment (Doc. 1, p. 16/Complt., p. 18—Doc. 1-1, p. 22/Complt., p. 54);**
>
> **Case 3:** **While Plaintiff was housed at Vandalia Correctional Center between December 13, 2013, and February 6, 2014, Defendants Reynal Caldwell, Warden Luth, Warden Moss and Dr. Larson were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment (Doc. 1-1, p. 22/Complt., p. 54—Doc. 1-1, p. 31/Complt., p. 63); and**

> **Case 4:** While Plaintiff was housed at Big Muddy River Correctional Center between February 6, 2014, to the present, Defendants Deborah J. Isaacs, J. Savkobs and Zachary Roeckeman were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment (Doc. 1-1, p. 31/Complt., p. 63—Doc. 1-2, p. 38/Complt., p. 110).

Cases 1 and 2 stem from events at institutions located within the Central District of Illinois, and Cases 3 and 4 pertain to events at institutions located in the Southern District of Illinois. Consequently, the appropriate venue for each case must be considered. Any civil action may be brought "in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

It can reasonably be assumed that the defendants working at each institution reside within the judicial district where the institution is located and where the relevant activity occurred. Therefore, the Court finds that the federal judicial district for the Central District of Illinois is the proper venue for the hearing and determination of Cases 1 and 2, and the Southern District of Illinois is the proper venue for determination of Cases 3 and 4. Accordingly, pursuant to 28 U.S.C. § 1391(b), § 1404(a), Cases 1 and 2 will be transferred to the United States District Court for the Central District of Illinois. Transfer will not occur for 21 days for reasons detailed below. Cases 3 and 4 shall remain in the Southern District of Illinois.

**<u>Filing Fees</u>**

As the Court of Appeals emphasized in *George v. Smith*, 507 F.3d at 607, a prisoner-plaintiff cannot avoid paying filing fees by improperly joining claims, rather than filing separate

cases. A plaintiff's obligation to pay the filing fee for an action is incurred at the time an action is filed. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Therefore, Plaintiff remains responsible for the filing fee in this original case (which shall pertain to Case 4) (*see* Doc. 10 granting Plaintiff pauper status). Although three additional actions will be opened (regarding Cases 1, 2 and 3, respectively), Plaintiff will be given 21 days in all four cases to state in writing whether he desires to proceed with that particular case, or to move for the voluntary dismissal of that case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). The transfers to the Central District of Illinois will not occur until this Court has received notice of how Plaintiff elects to proceed. Also, no filing fee will be assessed on any case that is voluntarily dismissed (except for this original case). If any of the three new cases is voluntarily dismissed, no filing fee will be assessed in that particular case. If Plaintiff elects to proceed with any of the three new cases, he must simultaneously file in that particular case a *new* motion for leave to proceed *in forma pauperis*, or pay the filing fee in full at that time.[2]

### Pending Motions

As already explained, "Case 4" regarding the claims arising at Big Muddy River Correctional Center, where Plaintiff is currently incarcerated, shall proceed in this case, Southern District of Illinois Case No. 15-cv-00084-SMY. In light of the pending motion for preliminary injunction (Doc. 2), service of summons and the complaint will be ordered to commence immediately, even though Plaintiff has yet to confirm that he desires to proceed with this

---

[2] Plaintiff should note that the filing fees for multiple cases cumulate. *See Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997), overruled in part on other grounds by *Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000); *Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000). Thus, when a prison sweeps an inmate's trust fund account each month to collect payments toward filing fees, a prisoner who files one suit must remit 20% of his monthly income to the Clerk of the Court until his fees have been paid; a prisoner who files a second suit or an appeal must remit 40%; and so on. *Newlin*, 123 F.3d at 436. "Five suits or appeals mean that the prisoner's entire monthly income must be turned over to the court until the fees have been paid." *Id*.

particular case. This case, along with the pending motion for preliminary junction (Doc. 2) and motion for counsel (Doc. 6), will be referred to a magistrate judge. The Court will wait until after the 21-day deadline to proceed on any of the other three cases.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Defendant **WEXFORD HEATH SOURCES, INC.**, is **DISMISSED without prejudice** from this action.

**IT IS FURTHER ORDERED** that Plaintiff's overarching Eighth Amendment claim regarding his medical care shall otherwise **PROCEED**, but is hereby **SEVERED** into the following separate cases. Accordingly, Plaintiff's Motion to Consolidate Jurisdiction (Doc. 4) is **DENIED**.

> **Case 1:** While Plaintiff was housed at East Moline Correctional Center between December 19, 2011, and February 13, 2013, Defendants William Rankin and Tod Van Wolvelaere were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment (Doc. 1, pp. 8-16/Complt., pp. 10-18);
>
> **Case 2:** While Plaintiff was housed at Jacksonville Correctional Center between February 19 and December 13, 2013, Defendants Marvin Reed, Eli Goodman, Becky Sudbrink and Nurse Warning were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment (Doc. 1, p. 16/Complt., p. 18—Doc. 1-1, p. 22/Complt., p. 54);
>
> **Case 3:** While Plaintiff was housed at Vandalia Correctional Center between December 13, 2013, and February 6, 2014, Defendants Reynal Caldwell, Warden Luth, Warden Moss and Dr. Larson were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment (Doc. 1-1, p. 22/Complt., p. 54—Doc. 1-1, p. 31/Complt., p. 63); and
>
> **Case 4:** While Plaintiff was housed at Big Muddy River Correctional Center between February 6, 2014, to the present, Defendants Deborah J. Isaacs, J. Savkobs and Zachary Roeckeman were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment (Doc. 1-1, p. 31/Complt., p. 63—Doc. 1-2, p. 38/Complt., p. 110).

**IT IS FURTHER ORDERED** that the Clerk of Court is **DIRECTED** to open what have been designated as "Cases 1, 2 and 3" as new cases, with random judge assignments. The four cases shall be opened and shall proceed as follows:

- "Case 4," regarding the events occurring at Big Muddy River Correctional Center, shall remain in this present action, Case No. 15-cv-00084-SMY. Only the defendants to "Case 4" shall remain defendants in this case; all others shall be terminated from this particular case.

- What has been referred to as "Case 3," regarding the events at Vandalia Correctional Center, will be opened as a new case and shall remain in the Southern District of Illinois. A district judge will be randomly assigned. The Court will await for Plaintiff's filing regarding whether he wants to proceed with "Case 3" before proceeding with a referral order and service of the summons and complaint. <u>No</u> motions filed relative to the original case will be incorporated into "Case 3;" therefore, for example, if Plaintiff seeks recruitment of counsel in "Case 3," he must file a motion in that case.

- If Plaintiff timely notifies this Court that he desires to proceed with either "Case 1" regarding events occurring at East Moline Correctional Center, or "Case 2" regarding events at Jacksonville Correctional Center, then transfer to the Central District of Illinois will proceed by separate order. Those cases will not proceed until after the deadline for Plaintiff to alert this Court to how he wants to proceed with each of those cases. <u>No</u> motions filed relative to the original case (Southern District of Illinois Case No. 15-cv-00084-SMY) will be incorporated into "Case 1" or "Case 2;" therefore, for example, if Plaintiff seeks recruitment of counsel in "Case 1" and "Case 2," he must file a motion in each of those cases.

**IT IS FURTHER ORDERED** that on or before **March 2, 2015**, in <u>each</u> of the four individual cases, Plaintiff shall state in a writing whether he desires to proceed, or he shall move for the voluntary dismissal of that case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). The transfers of "Cases 1 and 2" to the Central District of Illinois will not occur until this Court has received notice of how Plaintiff elects to proceed. Also, no filing fee will be assessed on any case that is voluntarily dismissed (except for this original case). If any of the three new cases is voluntarily dismissed, no filing fee will be assessed in that particular case. If Plaintiff elects to

proceed with any of the three new cases, he must simultaneously file in that particular case a *new* motion for leave to proceed *in forma pauperis*, or pay the filing fee in full at that time. Failure to comply with this directive in any one of the four cases will result in the dismissal of that case.

**IT IS FURTHER ORDERED** that, with respect to **"Case 4"/Case No. 15-cv-00084-SMY only**:

The Clerk of Court shall prepare for Defendants **DEBORAH J. ISAACS, J. SAVKOBS and ZACHARY ROECKEMAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a

true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants **DEBORAH J. ISAACS, J. SAVKOBS and ZACHARY ROECKEMAN** are **ORDERED** to timely file an appropriate responsive pleading to the complaint insofar as it pertains to the claims against them and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action, **Case No. 15-cv-00084-SMY**, is **REFERRED** to United States Magistrate Judge Philip M. Frazier for further pre-trial proceedings, including prompt handling of Plaintiff's motion for preliminary injunction (Doc. 2), consideration of Plaintiff's motion for counsel (Doc. 6). It will be left to Judge Frazier to determine if an amended complaint should be filed that would eliminate what is now superfluous.

Further, this entire case (Case No. 15-cv-00084-SMY) shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 6, 2015**

s/ STACI M. YANDLE
**United States District Judge**